USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 09/30/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARK S. KIRSCHNER, as Trustee of the
REFCO LITIGATION TRUST,

      Plaintiff,

v.

CIHLP LLC, CANTOR FITZGERALD L.P.,
and CANTOR FITZGERALD SECURITIES,

      Defendants.

No. 15-CV-8189 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Marc S. Kirschner, as Trustee of the Refco Litigation Trust, brings this action against Defendants CIHLP LLC, Cantor Fitzgerald, L.P., and Cantor Fitzgerald Securities, asserting claims for breach of contract and tortious interference with contract. Defendants move to dismiss the First Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND[1]

### A. The Parties

Refco Litigation Trust is a litigation trust established by agreement between Refco Group Ltd., LLC ("RGL") and other parties pursuant to the Joint Chapter 11 Plan of Refco Inc. and Certain of its Direct and Indirect Subsidiaries (the "Bankruptcy Plan"), which was approved by the United States Bankruptcy Court for the Southern District of New York on December 15, 2006. *See* FAC ¶ 17. Under the Bankruptcy Plan, some of RGL's claims, including those asserted here,

---

[1] These facts are drawn from the First Amended Complaint ("FAC"), *see* Dkt. 41, and are assumed to be true for purposes of resolving Defendants' motion to dismiss, *see Fernandez v. Zoni Language Ctrs., Inc.*, 858 F.3d 45, 48 (2d Cir. 2017).

1

were contributed to the Refco Litigation Trust. *See id.* ¶ 17. Marc S. Kirschner is the trustee of the Refco Litigation Trust and is authorized to pursue claims on its behalf. *See id.* ¶ 1.

Defendant Cantor Fitzgerald L.P. ("Cantor LP") is a limited partnership organized under the laws of Delaware. *See id.* ¶ 20. Cantor LP is the sole member of CFLP CFS Holdings, LLC, which is the managing general partner of CFLP CFS I Holdings, L.P., which is, in turn, the managing general partner of Defendant Cantor Fitzgerald Securities ("CFS"). *See id.* CFS is the sole member of Defendant CIHLP LLC ("CIHLLC"). *See id.* ¶ 19.

Plaintiff alleges that Cantor LP and its subsidiaries, including CIHLLC, are "dominate[d] and control[led]" by Howard W. Lutnick. *Id.* ¶ 26. Lutnick is the Chairman and CEO of Cantor LP, in which he has a limited partnership interest of greater than ten percent, and President, Chairman, and CEO of CFS. *See id.*; *see also id.* ¶ 79 (alleging that Lutnick was "responsible for [the] management of, and decision-making for, CFS"). Lutnick has also served as a director of other Cantor entities, including Cantor Index Limited ("CIL") and Cantor Fitzgerald Europe ("CFE"). *See id.* ¶ 26. Plaintiff alleges that Lutnick, along with other senior executives, "dominated and made key strategic decisions" for various Cantor entities, including CIHLLC and CIL. *Id.* ¶ 76.

### B. The CIH Partnership and the Limited Partnership Agreement

In May 2000, Cantor LP and CFS created CIH, a limited partnership organized under the laws of Delaware, to enter the gambling business. *See id.* ¶¶ 22, 35.[2] On or around January 1, 2002, RGL invested $8 million in CIH in exchange for a 10 percent limited partnership interest. *See id.* ¶ 37.

---

[2] According to the First Amended Complaint, Lutnick signed the agreement forming the CIH partnership on behalf of five Cantor entities: Cantor LP, CFS, CIHLLC, CIHLP II LLC, and CF Group Management as managing general partner of Cantor LP. *See* FAC ¶ 82.

2

The rights, powers, and responsibilities of CIH partners are set forth in the amended limited partnership agreement (the "LPA"), which is dated January 1, 2002. *See id.* ¶ 22; FAC Ex. A ("LPA"). The LPA designates CIHLLC as general partner and vests it with "the sole power to make management decisions on behalf of [CIH]," subject to certain exceptions. LPA § 3.01; FAC ¶ 40. The LPA provides, however, that "no action will be taken" by CIHLLC "with respect to or within the scope of" certain enumerated "decisions or actions," including "[s]elling all, or substantially all, of the business or assets of [CIH]" without the unanimous approval of all CIH partners. LPA § 3.03; FAC ¶ 42.

CIH operates through several wholly owned subsidiaries, including CIL. *See* FAC ¶ 23. During the period relevant to this dispute, CIL's primary business involved "contracts for difference" ("CFDs") and "spread betting services"—products that provide investors opportunities to bet on movements in the prices of financial instruments. *See id.* ¶¶ 46–50, 61–62. CIL grew over time and generated substantial revenue for CIH. *See id.* ¶¶ 51–56. Indeed, for each fiscal year from 2008 through 2012, CIL's "operations" accounted for nearly 90 percent of the "assets and revenue" of CIH. *Id.* ¶ 62.

In its 2010 and 2011 annual reports, CIL reported that its directors, including Lutnick, and management had commenced plans to transfer all its "trading activity" to CFE. *See id.* ¶¶ 67–68. The First Amended Complaint alleges that on or about December 19, 2012, CIHLLC "caused" CIL to "sell its CFD and financial spread betting business" to CFE for $1 (the "CFE Transaction"). *Id.* ¶ 69. Plaintiff alleges that CIHLLC "neither sought nor received consent from RGL for this sale." *Id.* ¶ 73.

According to the First Amended Complaint, the annual revenue of CIL and its parent, CIH, decreased considerably following the CFE Transaction. Specifically, for the fiscal year ending

3

December 31, 2013, CIL and CIH reported annual revenue of $0 and $33,000, respectively, *id.* ¶ 71, down from $8,089,000 and $8,388,000 for the fiscal year 2010, *see id.* ¶ 63. In June 2013, CIL was deauthorized by the Financial Conduct Authority, its regulator in the United Kingdom. *See id.* ¶ 70. According to its 2013 annual report, CIL is "no longer actively trading," and it has "no intention to do so in the future." *Id.* ¶ 71.

## C. Procedural History

On October 16, 2015, Plaintiff filed a complaint in this action against CIHLLC, Cantor LP, and CFS. *See* Compl. (Dkt. 1). The complaint claimed that CIHLLC breached the LPA by selling substantially all of CIH's assets, through the CFE Transaction, without receiving unanimous approval of all CIH members, and that Cantor LP and CFS aided and abetted in CIHLLC's breach. *See id.* ¶¶ 86–108.

On September 30, 2016, the Court granted Defendants' motion to dismiss the complaint under Rule 12(b)(6). *See* Opinion & Order (Dkt. 32). The Court determined that Plaintiff had failed to plausibly allege that CIHLLC took any "action" in the CFE Transaction. *See id.* at 7–9. Rather, the Court explained, Plaintiff had alleged that that it was *CIL* that sold its assets to CFE, and CIL's management that approved the sale. *See id.* at 8. The Court acknowledged that, in light of the fact that CIH owns CIL, it was "conceivable" that CIHLLC, as CIH's general partner, may have had "some role" in the sale, but concluded that the complaint "offers nothing in the way of 'well-pleaded facts' to support this assertion." *Id.* The Court then dismissed Plaintiff's second cause of action, determining that aiding and abetting breach of contract is not a valid cause of action under either New York or Delaware law. *See id.* at 9. To the extent that the complaint asserted a claim for tortious interference with contract, the Court dismissed it on the grounds that

4

such a claim cannot survive where there is no properly alleged claim for an underlying breach. *See id.* at 10.

On November 14, 2016, Plaintiff filed the First Amended Complaint. The First Amended Complaint adds 78 paragraphs to the original complaint, many of which include allegations regarding the relationships among various Cantor entities. *See id.* On December 1, 2016, Defendants moved to dismiss the First Amended Complaint under Rule 12(b)(6). *See* Defs.' Mot. to Dismiss (Dkt. 42); Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Dkt. 43). On January 12, 2017, Plaintiff filed a brief in opposition, *see* Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss Am. Compl. ("Pl. Opp'n Mem.") (Dkt. 45), and on February 2, 2017, Defendants filed a reply, *see* Defs.' Reply Mem. (Dkt. 47).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but rather "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011) (internal quotation marks omitted). In answering this question, the Court must "accept[] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual

allegations." *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (quotation marks omitted) (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).[3]

## DISCUSSION

### A. Breach of Contract

Plaintiff first claims that CIHLLC breached the LPA by selling all or substantially all of CIH's business or assets, without unanimous approval of CIH members, in the CFE Transaction. *See* FAC ¶¶ 162–67. Defendants argue that Plaintiff's breach of contract claim fails because, as in its initial complaint, Plaintiff has not plausibly alleged that CIHLLC took any action in selling CIH's business or assets. *See* Defs.' Mem. at 12–14. The Court agrees.[4]

The LPA prohibits CIHLLC from taking several "action[s]," including "[s]elling all, or substantially all, of the business or assets" of CIH without first obtaining unanimous approval from all CIH partners. LPA § 3.03; *see* FAC ¶ 42. While Plaintiff asserts that the CFE Transaction constitutes a sale of "all, or substantially all" of CIH's business or assets, it has not alleged that CIHLLC played any role in this sale. LPA § 3.03. Using language identical to that in the original complaint, the First Amended Complaint alleges that CIHLLC "caused" CIL to "sell its CFD and financial spread betting business" to CFE. FAC ¶ 69; *see* Compl. ¶ 69. In its brief, Plaintiff asserts—in similarly conclusory terms—that "CIHLLC effectively shut CIL down" and that "CIHLLC made CIL" sell its trading business. Pl. Opp'n Mem. at 1, 6. Plaintiff has not, however,

---

[3] The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1334(b), as this case relates to the Chapter 11 bankruptcy case in *In re Refco Inc.*, No. 05-60006 (RDD) (Bankr. S.D.N.Y.).

[4] In granting Defendants' motion to dismiss Plaintiff's original complaint, the Court determined that Delaware law governs Plaintiff's breach of contract claim. *See* Op. & Order at 6 (Sept. 30, 2016) (Dkt. 32). Neither party has challenged that conclusion here. Accordingly, in considering Plaintiff's breach of contract claim, the Court applies Delaware law. The elements of a breach of contract claim under Delaware law are not in dispute: Plaintiff "must allege facts plausibly demonstrating: '(1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiff.'" *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 333 (D. Del. 2017) (quoting *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003)).

supported these assertions with allegations of any specific actions CIHLLC took in connection with the sale. Rather, as in its initial complaint, Plaintiff alleges that that the decision to sell CIL's CFD and spread-betting business was made by CIL's own board of directors—not by CIHLLC. *See* FAC ¶ 69. Thus, absent specific allegations that CIHLLC took some "action" as part of any sale of CIH's assets or business, Plaintiff has not stated a claim against CIHLLC for breach of contract.

While not cast in precisely these terms, Plaintiff's main argument in opposition to Defendants' motion is that the Court should disregard the corporate forms of CIHLLC and other Cantor entities. *See* Pl. Opp'n Mem. at 1, 10–13. Plaintiff argues that "the corporate formal differences between CIL, CIHLLC, and various other Cantor entities were a sham." *Id.* at 1. Thus, in Plaintiff's view, the participation of at least some Cantor entities in the CFE Transaction, even without specific allegations regarding actions taken by CIHLLC, is sufficient to state a claim against CIHLLC for breach of the LPA. *See id.* at 1–2, 10–13. This argument is not persuasive.

Under Delaware law, a limited liability company ("LLC"), like CIHLLC, is "an entity that, as a general matter, provides 'tax benefits akin to a partnership and limited liability akin to the corporate form.'" *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008) (quoting *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 287 (Del. 1999)). "'Delaware courts especially take the corporate form very seriously and will disregard it only in the exceptional case." *Nat'l Gear & Piston, Inc. v. Cummins Power Sys.*, LLC, 975 F. Supp. 2d 392, 401–02 (S.D.N.Y. 2013) (internal quotation marks omitted). Thus, a "plaintiff seeking to persuade a Delaware court to disregard the corporate structure faces 'a difficult task.'" *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1458 (2d Cir. 1995) (quoting *Harco Nat'l Ins. Co. v. Green Farms, Inc.*, No. Civ. A. 1331, 1989 WL 110537, at *4 (Del. Ch. Sept. 19, 1989)); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp.

7

260, 270 (D. Del. 1989) ("Since it is the exceptional instance where a court will disregard the corporate form, the party who wishes the court to disregard that form bears the burden of proving that there are substantial reasons for doing so." (citation omitted)).

Nonetheless, "Delaware law permits a court to pierce the corporate veil 'where there is fraud or where the corporation is in fact a mere instrumentality or alter ego of its owner.'" *NetJets*, 537 F.3d at 176 (alteration omitted) (quoting *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992)).[5] To disregard the form of an LLC under Delaware law, a plaintiff must show that: (1) "the entities in question operated as a single economic entity," and (2) "there was an overall element of injustice or unfairness." *NetJets*, 537 F.3d at 177; *accord Fletcher*, 68 F.3d at 1457. In determining whether entities operated as a single economic unit, a court must "start with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation." *NetJets*, 537 F.3d at 176–77 (quoting *Harco*, 1989 WL 110537, at *4). These factors include:

> whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*NetJets*, 537 F.3d at 177 (quoting *Harco*, 1989 WL 110537, at *4); *accord Fletcher*, 68 F.3d at 1458. "To make the second, 'injustice or unfairness' showing, a plaintiff must establish that the LLC 'effectively exists as a sham or shell through which the parent perpetrates injustice." *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 241 F. Supp. 3d 461, 475 (S.D.N.Y. 2017)

---

[5] "These principles are generally applicable as well where one of the entities in question is an LLC rather than a corporation," except that "[i]n the alter-ego analysis of an LLC, somewhat less emphasis is placed on whether the LLC observed internal formalities because fewer such formalities are legally required." *NetJets*, 537 F.3d at 178; *accord Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 521 (S.D.N.Y. 2012).

(alterations omitted) (quoting *De Sole v. Knoedler Gallery, LLC*, 139 F. Supp. 3d 618, 665 (S.D.N.Y. 2015)). The "claimed injustice must consist of more than merely the tort or breach of contract that is the basis of the plaintiff's lawsuit." *NetJets*, 537 F.3d at 183. Ultimately, "[n]o single factor can justify a decision to disregard the corporate entity, but some combination of them is required, and *an overall element of injustice or unfairness must always be present, as well.*" *Id.* at 177 (alterations omitted) (emphasis in original) (quoting *Harper v. Del. Valley Broad., Inc.*, 743 F. Supp. 1076, 1085 (D. Del. 1990), *aff'd*, 932 F.2d 959 (3d Cir. 1991)).[6]

In this case, Plaintiff has not plausibly alleged that the CIHLLC and the other Cantor entities at issue "operated as a single economic entity." *Id.* The First Amended Complaint does not address many of the factors courts typically consider in determining whether to disregard the corporate form. It does not, for example, address whether these entities were "adequately capitalized," whether they were "solvent," whether "dividends were paid," or whether a "dominant shareholder siphoned corporate funds." *Id.* (quoting *Harco*, 1989 WL 110537, at *4). To be sure, the First Amended Complaint does contain several allegations regarding the organization and operation of Cantor entities. These allegations, however, accepted as true and viewed in the light most favorable to Plaintiff, are insufficient to establish that the Cantor entities at issue operated as a single economic entity.

First, Plaintiff alleges that the ownership of several Cantor entities, including CIHLLC, overlapped to at least some degree. For instance, the First Amended Complaint alleges that Cantor LP holds an indirect interest in CFS, which is the sole member of CIHLLC. *See* FAC ¶¶ 19–20. "By itself, however, 'ownership by one corporation of the stock in another corporation, either

---

[6] The Second Circuit has applied the same standard in evaluating alter-ego claims of a parent company's liability for its subsidiaries. *See, e.g., Fletcher*, 68 F.3d at 1457. In addition, "[c]ourts generally apply the same analysis whether the dominant shareholder is an individual or another corporation." *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 492 (S.D.N.Y. 2015).

directly or through a subsidiary, is simply not a sufficient legal basis to disregard corporate entities.'" *Unterberg v. ExxonMobil Oil Corp.*, 203 F. Supp. 3d 324, 329 (S.D.N.Y. 2016) (alterations omitted) (quoting *Banegas v. United Brands Co.*, 663 F. Supp. 198, 201 (D.S.C. 1986)); *see also Nat'l Gear*, 975 F. Supp. 2d at 404 ("[I]t is well established law that allegations of . . . a parent's ownership and operation of a subsidiary—even exclusively for the parent's gain—do not merit piercing the corporate veil."). Moreover, the ownership of the Cantor entities at issue here does not appear to overlap entirely: Cantor LP is not the sole owner of CFS, and CIH is, of course, owned in part by RGL. *See, e.g.*, FAC ¶¶ 20–22. But even if the ownership of these entities were identical, this fact would not be sufficient to show that they operate as a single economic entity. *See, e.g., Milner v. TPAC LLC (In re Ticketplanet.com)*, 313 B.R. 46, 71 (Bankr. S.D.N.Y. 2004) (dismissing a claim seeking to pierce the corporate veil despite allegations of a single shareholder's "ownership interest in all of the entities," as "[a]n overlap in ownership . . . is not uncommon or impermissible"); *Akzona Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F. Supp. 227, 238 (D. Del. 1984) (finding that allegations of one entity's "100% ownership" of two other entities, even combined with evidence that the subsidiaries were required to seek approval from the parent for certain capital expenditures, that the parent arranged financing for the subsidiary, and that the entities' boards of directors overlapped to some degree, were not sufficient to show that the subsidiaries were alter egos or mere instrumentalities of the parent under Delaware law).

Second, Plaintiff alleges that several Cantor entities shared managers, directors, and other employees. *See, e.g.*, FAC ¶¶ 28, 80, 92, 102–103. The First Amended Complaint alleges, for example, that Lutnick is the Chairman of both Cantor LP and CFS and a director of both CIL and CFE. *See* FAC ¶¶ 26, 79. Plaintiff likewise alleges that come Cantor employees "often could not differentiate" among Cantor entities. *Id.* ¶ 107. Under Delaware law, however, "[i]t is well-

established that wholly-owned subsidiaries may share officers, directors and employees with their parent, without requiring the court to infer that the subsidiary is a mere instrumentality for the parent and without requiring the court to conclude that those officers and directors were not functioning properly." *In re BH S & B Holdings LLC*, 420 B.R. 112, 138 (Bankr. S.D.N.Y. 2009), *aff'd as modified*, 807 F. Supp. 2d 199 (S.D.N.Y. 2011); *see also, e.g., Unterberg*, 203 F. Supp. 3d at 329 ("[I]t is not enough that related corporations have the same officers and directors . . . ." (citation omitted)); *Nat'l Gear*, 975 F. Supp. 2d at 403–04 (finding that allegations of a "substantial degree of overlap between the current management" of a parent and subsidiary were insufficient to pierce the corporate veil under Delaware law); *In re Ticketplanet.com*, 313 B.R. at 71 (finding that allegations of a "significant overlap in the directors" of multiple entities, as well as a shareholder's involvement in an entity's operations, were insufficient to state a veil-piercing claim); *Japan Petrol. Co. (Nig.) Ltd. v. Ashland Oil Inc.*, 456 F. Supp. 831, 841 (D. Del. 1978) (finding that common officers and directors between a parent and a subsidiary is no indication that the "parent corporation dominates the activities of the subsidiary"); *see generally United States v. Bestfoods*, 524 U.S. 51, 69–70 (1998) ("Since courts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary, it cannot be enough to establish liability here that dual officers and directors made policy decisions and supervised activities at the [subsidiary] facility." (internal citations and some quotation marks omitted)). Thus, Plaintiff's allegations of overlapping management, directors, and employees at Cantor entities is not sufficient to establish that these entities operated as a single economic entity.

Third, Plaintiff alleges that at least some Cantor entities share office space. Plaintiff alleges, for example, and that CIHLLC and CFS maintain principal places of business at the same address in New York, *see* FAC ¶¶ 18–19, and that CIL and CFE are "run out of the same office in

11

London," *id.* ¶ 93. As several courts have determined, however, allegations that related corporations share office space do not provide a sufficient basis for finding that corporate entities are a single economic entity. *See, e.g., Unterberg*, 203 F. Supp. 3d at 329 (explaining that the fact that "a parent and subsidiary hold themselves out as being a single integrated operation, controlled and managed from the parent's offices" is "not enough" to pierce the corporate veil (quoting *Kashfi v. Phibro-Salomon, Inc.*, 628 F. Supp. 727, 733 (S.D.N.Y. 1986))); *Merch. Coordinator Servs. Corp. v. Gen. Elec. Capital Corp. (In re Foxmeyer Corp.)*, 290 B.R. 229, 245 (Bankr. D. Del. 2003) (finding that a parent and subsidiary did not operate as a single economic entity under Delaware law, despite the fact that they shared "common office space, addresses, and telephone numbers"); *cf. Waite v. Schoenbach*, No. 10–CV–3439, 2010 WL 4456955, at *4 (S.D.N.Y. Oct. 29, 2010) (finding that a plaintiff's allegations "that Defendants operate[d] at the same location and share[d] employees, officers, owners, and bank accounts," without more, were "insufficient to pierce the corporate veil" under New York law). Thus, the fact that some Cantor entities share office space is not sufficient, without more, to show that they are in fact a single economic entity.

Finally, Plaintiff alleges that some Cantor entities prepared financial statements on behalf of others. For example, Plaintiff alleges that CFS created financial statements for CIH, *see* FAC ¶ 81, and that CFE employees prepared financial statements for CIL, *see id.* ¶ 106. While these allegations may suggest that the corporate distinctions among Cantor entities were not always as formal as they may be in other organizations, they are not sufficient to show that these Cantor entities operated as a single economic entity. The fact that employees of some Cantor entities participate in the preparation of the financial statements for other entities is not inconsistent with the smaller, less formal structure of limited partnerships and LLCs, particularly where, as here, these entities share some employees. *See NetJets*, 537 F.3d at 178 ("In the alter-ego analysis of

an LLC, somewhat less emphasis is placed on whether the LLC observed internal formalities because fewer such formalities are legally required."). More generally, Plaintiff does not allege that the Cantor entities failed to maintain corporate records—to the contrary, Plaintiff alleges that these entities did maintain such records, including annual directors' reports and financial statements, which were filed with regulatory authorities. *See, e.g.*, FAC ¶ 106; *see Fletcher*, 68 F.3d at 1459 (refusing to pierce the corporate veil under Delaware law because, *inter alia*, the plaintiffs did not challenge the corporations' assertions "that appropriate financial records and other files were maintained"); *Foxmeyer*, 290 B.R. at 245 (finding that parent and subsidiary corporations did not operate as a single economic entity where the subsidiary "maintained corporate records, elected directors, held board meetings, and compiled minutes for such meetings," even though the plaintiff "question[ed] the sincerity" of the records); *cf. Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 493 (S.D.N.Y. 2015) (finding that plaintiff plausibly alleged that two entities ignored corporate formalities where one entity "did not maintain financial records independent from [the other entity's] records" and did not "file its own tax returns").

Even if Plaintiff satisfied the "single economic entity" requirement for piercing the corporate veil under Delaware law, the First Amended Complaint does not plausibly allege "an overall element of injustice or unfairness." *NetJets*, 537 F.3d at 177. To satisfy the "injustice or unfairness" requirement, Plaintiff must "plead facts showing that the corporation is a sham and exists for no other purpose than as a vehicle for fraud." *In re BH S & B Holdings LLC*, 420 B.R. at 140 (quoting *In re RSL COM PRIMECALL, Inc.*, No. 01-11457 (ALG), 2003 WL 22989669, at *15 (Bankr. S.D.N.Y. Dec. 11, 2003)); *see also, e.g., A.V.E.L.A.*, 241 F. Supp. 3d at 475; *Ticketplanet*, 313 B.R. at 70 ("There must be an abuse of the corporate form to effect a fraud or an

13

injustice—some sort of elaborate shell game. To survive a motion to dismiss, a plaintiff must allege facts that the controlling owners operated the company as an 'incorporated pocketbook' and used the corporate form to shield themselves from liability." (internal quotation marks and citation omitted)). And as discussed above, "the claimed injustice must consist of more than merely the [claim] . . . that is the basis of the plaintiff's lawsuit." *NetJets*, 537 F.3d at 183; *accord TradeWinds Airlines, Inc. v. Soros*, No. 08-CV-5901, 2012 WL 983575, at *7 (S.D.N.Y. Mar. 22, 2012) ("Plaintiffs need only show an element of injustice distinct from the underlying wrong which gave rise to the cause of action . . . ." (emphasis added)); *Mobil Oil*, 718 F. Supp. at 268 ("The underlying cause of action does not supply the necessary fraud or injustice."). Here, Plaintiff does not plead any facts suggesting that the Cantor entities exist "for no other purpose than as a vehicle for fraud." *In re BH S & B Holdings LLC*, 420 B.R. at 140. To the contrary, Plaintiff alleges that at least some of these entities were created for legitimate business purposes. Plaintiff alleges, for example, that Cantor created CIH "to take advantage of Cantor's expertise in financial services in order to enter the gambling business." FAC ¶ 35. Nor does Plaintiff allege, apart from its causes of action here, that Cantor entities engaged in any other fraud, wrongdoing, or unjust activities. Therefore, Plaintiff has not plausibly alleged an overall element of fraud or injustice. *See, e.g., A.V.E.L.A.*, 241 F. Supp. 3d at 476 (granting a motion to dismiss a complaint seeking to pierce the corporate veil, where the plaintiff did not plausibly allege an overall element of injustice or unfairness); *Nat'l Gear*, 975 F. Supp. 2d at 407 (same).

The Court recognizes that, "[a]s a fact-specific inquiry, 'the issue of corporate disregard is generally submitted to the jury.'" *Overton v. Art Fin. Partners LLC*, 166 F. Supp. 3d 388, 404 (S.D.N.Y. 2016) (alteration omitted) (quoting *Stahlex-Interhandel Tr. v. W. Union Fin. Servs. E. Eur. Ltd.*, No. 99-CV-2246, 2002 WL 31359011, at *5 (S.D.N.Y. Oct. 21, 2002)). Nonetheless,

14

without plausible allegations that the Cantor entities at issue are a single economic entity or that there is an overall element of injustice or unfairness, Plaintiff has failed to provide a sufficient basis for disregarding the corporate form of CIHLLC or any other Cantor entity. As a result, and in the absence of any allegations that CIHLLC took any other "action" in selling the business or assets of CIH, the Court must dismiss Plaintiff's breach of contract claim.[7]

## B. Tortious Interference with Contract

Plaintiff's second claim is for tortious interference with contract against Cantor LP and CFS. *See* FAC ¶¶ 168–186.[8] As the Court explained in the September 30, 2016 Opinion and Order, however, Plaintiff cannot maintain a tortious interference with contract claim without adequately alleging an underlying breach. *See, e.g., Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (under New York law, a plaintiff asserting a claim for tortious interference with contract must show "actual breach of the contract" (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996)); *Robins v. Max Mara, U.S.A., Inc.*, 923 F. Supp. 460, 468 (S.D.N.Y. 1996) (under New York law, "[i]n order for the plaintiff to have a cause of action for tortious interference of contract, it is axiomatic that there must be a breach of that contract by the other party" (quoting *Jack L. Inselman & Co. v. FNB Fin. Co.*, 364 N.E.2d 1119, 1120 (N.Y.1977))); *Beard Research, Inc. v. Kates*, 8 A.3d 573, 607 (Del. Ch.) (holding that "a tortious interference with contractual relations claim will fail under Delaware law absent an actual breach of contract"), *aff'd sub nom. ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749 (Del. 2010). As

---

[7] Because the Court concludes that Plaintiff's breach of contract claim fails due to Plaintiff's failure to allege that CIHLLC participated in the sale of any CIH assets or business, it need not consider Defendants' alternative argument that the CFE Transaction, as alleged in the First Amended Complaint, does not constitute a sale of "all, or substantially all, of [CIH's] business or assets" under the LPA. *See* Defs.' Mem. at 2, 14–18.

[8] The Court need not decide whether this claim is governed by New York or Delaware law, as it fails under the law of either state.

discussed above, Plaintiff has not plausibly alleged a breach of the LPA. Therefore, Plaintiff has failed to state a claim for tortious interference with contract.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the First Amended Complaint is granted. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: September 30, 2017
       New York, New York

Ronnie Abrams
United States District Judge